**KUHLMAN, Plaintiff, v. MINGES et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-155740.   Decided January 30, 1953.

Goodman & Goodman, for plaintiff.
Richard T. Carroll, Norbert J. Bunke, c/o Carroll & Bunke, for defendants.

## OPINION

By SCHNEIDER, J.:

Under a contract dated August 19, 1952, plaintiff was employed by defendants as their sole agent to procure a purchaser for 317.50 acres, known as Minges Poultry Farm, located between East Miami River Road and the Big Miami River, for the sum of $150,000.00.  This contract further provided:

"In consideration of your efforts to procure a purchaser, I/we agree to pay you 6% the rate of commission as established by The Cincinnati Real Estate Board, said commission to be paid when binding contract for the sale is executed, and further agree that you shall have the exclusive right to sell said Real Estate for a period of six months, and that you shall be entitled to your commission if the Real Estate is sold

or exchanged by you, or the undersigned, or any other person, at any price acceptable to the undersigned, during the existence of this contract.

"The sale or exchange of the Real Estate described above, to any person to whom the broker shall have offered the same during the terms of this contract, if such sale or exchange is consummated within thirty days after its termination, shall be considered a sale effected by said broker and shall entitle him to the commission herein agreed to be paid."

According to the terms thereof, this contract expired February 19, 1953. While it is not set forth in the contract, the evidence indicates that the owner of the property considered that it was suitable for industrial purposes but the plaintiff was unsuccessful in interesting any prospects for industrial use. The plaintiff then suggested to the owners that the property might be available for gravel production, a portion thereof having already once been operated as a gravel pit by the owners, and suggested to the owners that the Ohio Gravel Company might be interested inasmuch as this company was, at the time, operating gravel pits nearby and probably adjoining the property of defendants. Defendants indicated that it would not be possible because they themselves tried to interest the Ohio Gravel Company on several occasions without success. However, they authorized the effort and the plaintiff conferred with the President of the Ohio Gravel Company, as a result of which an option (Exhibit 2) was purchased by the Ohio Gravel Company for the sum of $1,000.00, for approximately 60 acres constituting a portion of the real estate included in the selling agency contract (Exhibit 1). The Ohio Gravel Company proceeded to make tests on these 60 acres as provided for in the option, referred to as "clam shell excavations." The option expired December 20, 1952. The option was not exercised by the Ohio Gravel Company and it forfeited to defendants the $1,000.00. The parties were notified of the decision not to exercise the option, approximately on December 12, 1952.

Thereafter the plaintiff did nothing more except, as he relates, he had a call from Mr. Minges on March 13, 1953, as to which he does not recall the purpose. On May 1, 1953, he submitted a plat of the property to another prospect and on July 9, 1953, he had a call from a possible prospect and on October 10, 1953, a call from Mr. Carroll, the Attorney for Minges, wanting to know who got the $1,000.00 on the Minges option and, quoting the plaintiff: "That is where my notes stop" and he had not done "anything in reference to it following October, 1953."

The next thing that called plaintiff's attention to this property was an announcement in the newspapers that the Ohio Gravel Company had purchased a large tract of land from defendants.

The evidence discloses that some time prior to February of 1955, The Ohio Gravel Company and the defendants renewed negotiations, apparently at the suggestion of Mr. Minges, as a result of increased activity in the building of public roads at or near the property in question and on the theory that the location of the Minges property had become more desirable for gravel purposes because of this increased

road building activity in the vicinity. Under date of February 24, 1955, defendant executed an option (Exhibit 7) which option culminated in the purchase by the Ohio Gravel Company from defendants of 123 acres at a purchase price of $168,000.00. The testimony is to the effect that this purchase included only a small portion of that particular parcel which was the subject of the original option for 60 acres in October of 1952, and that "most of the 60 acres is still there and the Gravel Company never considered it."

The option of October 1952, which was executed well within the period of the exclusive agency contract, contains the following language:

"In consideration of the services of Egbert W. Kuhlman, Realtor, in securing a purchaser for the property described in the within option, Grantors herein agree that if the property is sold in accordance with the terms of the within option, or any extension, renewal or modification thereof, Grantors will pay Egbert W. Kuhlman a commission of 6% on the sale price of $65,000.00 or on the amount for which said property may be sold."

The question to be determined is, therefore, did the option of March 24, 1955, constitute an extension, renewal or modification of the option of October 20, 1952?

The period of time which elapsed between December 12, 1952, when the first option was turned down by the Gravel Company, and February 24, 1955, when the second option was executed, is two years and two months (26 months).

The Court has concluded that the option executed between the parties on March 24, 1955 (Exhibit 7), was an extension, renewal or modification of the option of October, 1952 (Exhibit 2), and this conclusion is based upon the principle of law established in the case of **Richter v. First National Bank, 82 Oh Ap, page 421,** namely: that when no time is stipulated in a contract the law implies a reasonable time and what constitutes a reasonable time depends upon numerous factors, one of which would be a consideration of the difficulty of finding a purchaser because of the peculiar type of property involved and the usages to which it would be put and that in such case it might be reasonable to anticipate that it would take five or six years to find a purchaser. The case of Bowman v. Hartman, 6 O. C. C. (N. S.) 264, is further authority for this rule.

The next question to be determined is whether the plaintiff has a right to a commission upon all of the property ultimately sold by defendant to the Gravel Company.

There can be no question but that the plaintiff herein was the procuring cause of the original option which covers specifically 60 acres of land. This option supersedes the original contract between the parties which was for the sale of 317.5 acres. The rights of plaintiff are defined within the terms of this first option which limits the right of plaintiff to recover a commission on 60 acres only, inasmuch as it is apparent that the purchaser was, at that time, interested only in that amount of acreage. The fact that conditions and circumstances changed

to the extent that by the time the final transaction was consummated, the purchaser was interested in 123 acres rather than 60 acres, does not entitle plaintiff to a commission on the entire acreage sold by defendant.

On the other hand, the mere fact that the final selection by the purchaser of 123 acres out of the original 317.50 acres offered for sale by defendants, included only a portion of the 60 acres for the sale of which defendants agreed to pay plaintiff a commission, does not deprive plaintiff of his right to the commission for 60 acres of land sold.

The Court is of the final opinion, therefore, that the plaintiff is entitled to a commission of six per cent on the sale of 60 acres of land at the price of $65,000.00, namely, an amount of $3,900.00.

An entry may be presented in accordance with this finding.